<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITRONICS, INC. et al., | Hon. Stanley R. Chesler<br>Civil Action No. 09-3493 |
| Plaintiffs, |  |
| v. | **OPINION** |
| ROBOTIC PARKING SYSTEMS INC. et. al., |  |
| Defendants. |  |

<u>**CHESLER, U.S.D.J.**</u>

This matter comes before this Court on the motion to dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), by Defendants Robotic Parking Systems, Inc. and Robotic Service Organization, LLC (collectively, "Robotic.") For the reasons set forth below, Defendants' motion to dismiss will be granted.

<u>**BACKGROUND**</u>

This case arises out of a dispute over discovery in a related case, Robotic Parking Systems Inc. et al. v. City of Hoboken et al. (Civil Action No. 06-3419) (the "Hoboken Action.") In the Hoboken Action, Robotic, as plaintiff, sued the City of Hoboken and various other parties, including Unitronics, Inc. and Unitronics (1989) (R"G) Ltd. (collectively, "Unitronics.") Robotic and Unitronics entered into a settlement agreement (the "Settlement Agreement") and, on July 20, 2007, Robotic dismissed its claims against Unitronics. Robotic later sought discovery of certain software on the computers of Unitronics. On July 1, 2009, Unitronics filed a letter on the

docket in the Hoboken Action, raising concerns about the inspection of its computers and seeking permission to file a motion to intervene. On July 16, 2009, before the Court had acted on this request of July 1, Unitronics filed the Complaint which initiated the instant action.

Unitronics subsequently moved to intervene in the Hoboken Action for the limited purpose of litigating the computer inspection request, and this Court granted the motion. Unitronics moved for a protective order and, on January 15, 2010, Magistrate Judge Shipp issued an Opinion and Order which granted in part and denied in part Unitronics' motion. Unitronics appealed Magistrate Judge Shipp's decision to this Court, and this Court affirmed it. Unitronics then appealed this Court's decision to the Third Circuit, where it is currently pending. Magistrate Judge Shipp's Order has been stayed pending appeal.

On September 24, 2009, Robotic filed the instant motion to dismiss the Complaint for failure to state a claim.

## ANALYSIS

I.  **Governing Legal Standards**

   A.  Standard for a Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

"The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 127 S. Ct. at 1964 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted).

Factual allegations must be well-pleaded to give rise to an entitlement to relief:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259

(3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." New York v. Hill, 528 U.S. 110, 118 (2000). Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

**II.     Defendants' 12(b)(6) motion to dismiss**

Quite simply, this is a suit that was unnecessary and duplicative from the start. This case was filed with the goal of preventing inspection of Unitronics' computers in the Hoboken Action. As disclosed by Plaintiffs' counsel during the oral argument at which Plaintiffs' application for a preliminary injunction was denied, this lawsuit is essentially an ill-disguised effort to do an end run around the discovery motions decided by United States Magistrate Judge Shipp in the Hoboken Action, which have already been affirmed by this Court.

Subsequent to the filing of this case, Unitronics took the appropriate steps necessary to assert its legal rights: it moved to intervene in the Hoboken Action, it moved for a protective order, it appealed Magistrate Judge Shipp's Order, and it appealed this Court's Order affirming

Magistrate Judge Shipp's decision. This additional suit was unnecessary and duplicative at the time it was filed, and it has become only more so since then.

This Court has the authority to manage its docket to promote conservation of judicial resources and to prevent duplicative litigation. This authority comes from several sources. First, a federal court has the inherent power to dismiss a duplicative suit. The Second Circuit stated well the rationale for this:

> As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation.") The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion. . . The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the comprehensive disposition of litigation. The doctrine is also meant to protect parties from the vexation of concurrent litigation over the same subject matter.

Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (citations omitted).[1] Second, a party has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." Walton v. Eaton Corp., 563 F.2d 66, 70 (3d Cir. 1977). Third, the Third Circuit has stated:

> [M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court. We will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.

---

[1] In a non-precedential opinion, the Third Circuit cited Curtis approvingly in affirming the dismissal of a duplicative case. Schneider v. United States, 301 Fed. Appx. 187, 189 (3d Cir. 2008). See also Hutchins v. UPS, 197 Fed. Appx. 152, 159 (3d Cir. 2006) (same).

In re Fine Paper Antitrust Litigation, 685 F.2d 810, 817 (3d Cir. 1982).

      There are thus multiple justifications for dismissing this case as duplicative of the Hoboken Action. This Court has allowed Unitronics to intervene in the Hoboken Action to litigate the protective order. The instant case thus duplicates that litigation: the parties are the same (Unitronics and Robotic), the subject matter is the same (disclosure of the computer software), and they are at the same time in the same court. The relief sought in the Complaint is primarily injunctive: Unitronics seeks various orders enjoining Robotic from pursuing the inspection. Although the prayer for relief includes damages, all three claims assert that Unitronics has no adequate remedy at law, and the Complaint is clearly aimed at enjoining Robotic from discovering the software in the Hoboken Action. Under Walton, Unitronics does not have the right to pursue this case.

      Furthermore, the policy of conservation of judicial resources counsels refusing to allow this duplicative case to proceed. Unitronics has been making use of its opportunities[2] to fully litigate the protective order in the Hoboken Action: it has appealed the Magistrate Judge's decision to this Court, and it has appealed this Court's Order denying that appeal to the Third Circuit, where it is pending. In view of that litigation, it makes no sense to allow additional litigation of the same matter in a second case in this Court. Such duplicative litigation wastes resources and risks interfering with a matter presently pending before the Third Circuit. Moreover, dismissal of this duplicative case will cause Unitronics to suffer no actual prejudice.

---

[2] The Third Circuit has spelled out the legal remedies available to a party dissatisfied with a protective order relating to trade secrets in In re Carco Elecs., 536 F.3d 211, 214 (3d Cir. 2008) ("Parties like [appellant] who believe they have been granted insufficient protection are not without remedy.")

This Court therefore dismisses the Complaint because it is duplicative of the Hoboken Action.  As an alternative holding, the Court dismisses the Complaint on the following grounds.

### A. First claim: breach of the settlement agreement

In the First Claim, Unitronics alleges that Robotic has breached paragraph 1.6 of the Settlement Agreement by seeking discovery of Unitronics' trade secrets before Magistrate Judge Shipp.  Robotic moves to dismiss this claim on two grounds: 1) the conduct complained of does not come within the scope of the Settlement Agreement; and 2) Unitronics has not sufficiently alleged the elements required to state a claim for breach of contract.  Before reaching these arguments, however, this Court *sua sponte* inquires into whether it has subject matter jurisdiction over this claim.

A party's standing to assert a claim is a matter of subject matter jurisdiction, and this Court is obligated to examine the question of standing *sua sponte* when it has not been raised by the parties.  Adarand Constructors, Inc. v. Mineta, 534 U.S. 103, 110 (2001).  The Supreme Court has summarized the standing analysis as follows:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court."  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (citations omitted).

The Complaint does not plead sufficient facts to establish that Unitronics meets the requirements for constitutional standing to bring the First Claim. First, Unitronics has not sufficiently pled an injury in fact. It has pled a future injury predicated on the prediction that inspection of its computers will require that the garage be shut down for two to four days. This does not meet the imminence requirement. As the Supreme Court explained in Lujan, to be imminent, an injury must be "certainly impending:" "It has been stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time . . ." Id. at 564. Similarly, in the instant case, Plaintiffs have alleged an injury that is not certainly impending but, rather, may occur, if ever, only at some indefinite future time. This is not sufficiently imminent to confer standing.

Second, there is a major problem in meeting the causality requirement: the injury is the result of the independent action of a third party not before the Court – the federal judicial system (including the Magistrate Judge, this Court, and the Third Circuit[3]). The expected injury will occur only if the Third Circuit reverses this Court's affirmance of Magistrate Judge Shipp's decision, and the injury will thus be proximately caused by the decisions of these Courts, who are third parties not before this Court. The First Claim does not meet the second Lujan requirement.

Third – and this is a corollary to the second point – the injury is not likely to be redressed by a favorable decision of this Court. The issue of the protective order will be decided in the appeal pending before the Third Circuit. This Court will follow the Third Circuit's mandate from that appeal. A decision by this Court on the First Claim will not impact that mandate or its execution. The injury cannot be redressed by a favorable decision of this Court. The First Claim

---

[3] And, conceivably, the Supreme Court, should the appeal reach that level.

does not establish any of the three requirements for constitutional standing under Lujan.  The First Claim will be dismissed for lack of subject matter jurisdiction.

Because this Court has found no subject matter jurisdiction over the First Claim, it need not reach Defendants' arguments for dismissal.

      B.      Second claim: tortious interference with contract

The parties agree on the elements required to state a claim for tortious interference with a contract under New Jersey law:

> Under New Jersey law the five elements of a claim of tortious interference with a prospective or existing economic relationship are: (1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference.

Lightning Lube v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993).

The theory that Robotic's attempts to obtain discovery constitutes tortious interference with the contract between Unitronics and Hoboken has such large defects that it is more holes than cheese.  While it is clear that Unitronics and Hoboken have entered into a contract which confers upon Unitronics a reasonable expectation of economic benefit, Plaintiffs here have not alleged sufficient facts to support the third element, defendant's wrongful, intentional interference with that expectancy, nor the fifth element, resulting damages.  There are no facts alleged which would tend to support an inference that the discovery process will interfere with or injure the business relationship between Unitronics and Hoboken, nor that Unitronics will suffer a loss of the economic benefits it expects.  Furthermore, Plaintiffs have not alleged facts which would support the inference that Robotic has acted with the requisite malice.  See Printing

Mart-Morristown v. Sharp Electronics Corp., 563 A.2d 31, 37 (1989).  Plaintiffs have failed to adequately state a valid claim for relief.

        C.        Third claim: malicious abuse of process

The parties also agree on the elements required to state a claim for malicious abuse of process under New Jersey law: "an ulterior motive and some further act after the issuance of process representing the perversion of the legitimate use of the process." Simone v. Golden Nugget Hotel & Casino, 844 F.2d 1031, 1036-1037 (3d Cir. 1988) (quoting Fielder Agency v. Eldan Constr. Corp., 152 N.J. Super. 344, 348-49 (N.J. Super. Ct. Law Div. 1977).  Thus, a plaintiff must allege a further act by which the defendant acted to use the process in an illegitimate way.  "In the absence of some coercive or illegitimate use of the judicial process there can be no claim for its abuse."  Penwag Property Co. v. Landau, 148 N.J. Super. 493, 499 (N.J. Super. Ct. App. Div. 1977).

The Third Claim fails to allege a further act representing the perversion of the legitimate use of the process.  In fact, the Third Claim does not allege any acts subsequent to Defendants' use of the discovery process.  As such, Plaintiffs have failed to adequately state a valid claim for malicious abuse of process.

Defendants' motion to dismiss the Complaint will be granted.  Because the major defect in the Complaint – that this is duplicative litigation – may not be remedied by amendment, the Complaint will be dismissed with prejudice.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(6), will be granted, and the Complaint will be dismissed with prejudice.

 /s Stanley R. Chesler
STANLEY R. CHESLER. U.S.D.J.

Dated: June 18, 2010